STATE OF NORTH CAROLINA v. ROBERT DOUGLAS ALFORD

No. 365A93

(Filed 10 February 1995)

### 1. Evidence and Witnesses § 264 (NCI4th)— noncapital first-degree murder—character of victim—peacefulness

There was no prejudicial error in a noncapital first-degree murder prosecution in admitting evidence of the victim's character for peacefulness. Assuming that admission of the evidence that the victim was not known to be a violent person or to carry

a gun was error, defendant cannot show prejudice because the other challenged evidence, that the victim was not in any of the altercations at the Soul Train Lounge the night of the murder and that neither defendant nor his friends were armed, was relevant to premeditation and deliberation and to motive and was properly admitted. Moreover, defendant waived his right to raise these objections on appeal because, for each item objected to under this assignment of error, virtually the same evidence was admitted without objection at other times during the trial.

**Am Jur 2d, Evidence § 373.**

2. **Criminal Law § 448 (NCI4th)— noncapital first-degree murder—prosecutor's argument—victim as peaceful person**

There was no plain error in a noncapital first-degree murder prosecution where defendant argued that the prosecution should not have been allowed to argue that the evidence that the victim was a peaceful person who had been shot for no apparent reason was connected with the jury's determination of premeditation and deliberation. The prosecutor did not exceed the scope of the evidence or reasonable inferences therefrom and evidence of the lack of provocation was relevant to premeditation and deliberation and to motive.

**Am Jur 2d, Trial § 396.**

3. **Evidence and Witnesses § 663 (NCI4th); Criminal Law § 447 (NCI4th)— noncapital first-degree murder—prosecutor's argument—victim's family**

There was no prejudicial error in a noncapital first-degree murder prosecution where the trial court failed to rule on defendant's objection to an allegedly improper victim impact argument by the prosecutor and no plain error in the court's not intervening *ex mero motu* to prevent the prosecutor from further commenting on the impact on the victim's family. Any party is entitled as a matter of law to a ruling on an objection, but the error in failing to rule was not prejudicial because the prosecutor's comments, in the context of the entire argument, did not attempt to make sympathy for the victim or his family the focus of the jury's deliberation, did not imply that the jury should consider accountability to the victim's family or the community in reaching its verdict, and the record provides ample evidence to support defendant's first-

degree murder conviction. In the absence of a showing of prejudice, improper jury arguments do not require reversal.

**Am Jur 2d, Trial §§ 396, 664 et seq.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3 8.**

4. **Assault and Battery § 82 (NCI4th)— noncapital first-degree murder—felony murder—discharging firearm into occupied property—instructions**

There was no plain error in a noncapital first-degree murder prosecution where defendant contended that the court erred in its instruction on felony murder in that, while the court correctly defined the underlying felony, discharging a firearm into an occupied vehicle, the instruction did not inform the jury that this definition contained separate elements that must be found beyond a reasonable doubt in order for the jury to find defendant guilty of felony murder. Defendant disputed only the identity of the perpetrator; the occurrence of the underlying felony was not disputed and there is no evidence that anything other than the discharge of the firearm into the vehicle caused the victim's death. The trial court fully defined the underlying felony of discharging a firearm into occupied property, the terms used in this definition were essentially self-explanatory, and the trial court did not err in instructing on the burden of proof or the essential elements of discharging a firearm into occupied property as the underlying felony for felony murder.

**Am Jur 2d, Trial §§ 2077 et seq.**

5. **Criminal Law § 903 (NCI4th)— noncapital first-degree murder—instructions on premeditated and deliberate murder and felony murder—disjunctive**

There was no plain error in a noncapital first-degree murder prosecution where defendant contended that the court's disjunctive instructions on premeditated and deliberate murder and felony murder were fatally ambiguous in that it is impossible to determine whether the jury unanimously found that defendant actually committed either premeditated and deliberate murder or felony murder or if different jurors convicted on the basis of different theories. The actual instructions given by the trial court made it clear to the jury that it had to be unanimous on both the

verdict and the basis for that verdict and the verdict sheet returned by the jury and the jury poll indicate that the jurors did not construe the instructions to allow conviction on a basis that was not unanimous.

**Am Jur 2d, Criminal Law § 892; Trial § 1437.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

**6. Evidence and Witnesses § 1694 (NCI4th)— noncapital first-degree murder—photographs of victim—admissible**

The trial court did not err in a noncapital first-degree murder prosecution by admitting photographs depicting the victim's body in the backseat of an automobile which was wrecked on the way to the hospital following a shooting. The challenged photographs were used for illustrative purposes by several witnesses, nothing suggested that the photographs were used to incense the jurors or incite their prejudices and passions against defendant, and the State made no attempt to draw undue attention to these photographs.

**Am Jur 2d, Evidence § 974.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2 769.**

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Bowen, J., at the 18 May 1993 Criminal Session of Superior Court, Robeson County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 14 September 1994.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Associate Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

PARKER, Justice.

Defendant was tried noncapitally on an indictment charging him with the first-degree murder of Joey Addison ("victim"). The jury

returned a verdict finding defendant guilty of first-degree murder upon the theories of (i) premeditation and deliberation and (ii) felony murder. Defendant was sentenced to life imprisonment. For the reasons discussed herein, we conclude that defendant's trial was free of prejudicial error and uphold his conviction and sentence.

The State's evidence tended to show that on the afternoon of 27 September 1992 the victim went to his mother's house to return a lawn mower and traded his smaller car for her larger 1980 Oldsmobile. Gregory Dixon, the victim's cousin, who was visiting from Washington, D.C., testified that the victim picked him up that afternoon after leaving his mother's house and the two returned to the victim's residence in Rowland, North Carolina. Jeffrey Rowdy and Gerard Bennett came over to the victim's house around 9:00 p.m. and played cards with the victim, Dixon, and some other friends. One of the men, Eugene, had firecrackers in his pockets. Around 11:00 p.m. the victim, Dixon, Rowdy, and Bennett left in the 1980 Oldsmobile and went to a local pool hall where they stayed for approximately forty-five minutes. After leaving the pool hall, the men went to the store and purchased several six-packs of beer. The men drove to the Soul Train Lounge near Fairmont and sat in the parking lot for about thirty-five minutes, drinking their beer and talking to other friends, including Reginald and Tony Roberts. During this time, the victim drank approximately a six-pack of beer. State's evidence tended to show that neither the victim nor any of his friends were armed with any weapons that night, either in the parking lot or inside the Soul Train Lounge.

After finishing their beer, the victim and his friends went into the lounge. A fight broke out between some men from Rowland and some men from Fairmont, and the manager of the bar made everyone go outside. The State's evidence tended to show that neither the victim nor his friends from Rowland were involved in the fight or in any other altercations at the Soul Train Lounge the night of 27 September 1992.

Approximately twenty minutes later the manager began to let people back into the lounge. The victim talked to the manager of the bar and told him that neither he nor his friends had been involved in the fight inside the lounge, and the manager let them reenter the bar. Another fight soon broke out. At that point the manager closed the bar for the night and made everyone leave. The State's evidence tended to show that neither the victim nor any of his friends were involved in this second altercation.

STATE v. ALFORD

[339 N.C. 562 (1995)]

After the Soul Train Lounge was closed for a second time, the victim stood under a tree in the parking lot, talking with several friends. Firecrackers were set off in another part of the parking lot by someone, possibly by the victim's friend Eugene. The State's evidence tended to show that several shots were fired while the victim was standing in the parking lot, and the victim and his friends ran to his mother's car. The victim got into the driver's seat, Dixon got into the front passenger seat, and Rowdy and Bennett got into the backseat.

Rowdy, who was sitting directly behind the victim, testified that after the men got into the car, he heard a shot fired from his left and saw the victim slump over. Dixon testified that the victim grabbed Dixon's leg. Dixon opened his door and saw that his cousin had been shot and had blood running down his shirt. Dixon, Rowdy, and Bennett grabbed the victim and put him in the backseat of the car. At this time, the men saw a man with a rifle run in front of the car; the man was cursing at them and calling them names. He got into a car that pulled up in front of the victim's car and then drove away.

After placing the victim in the backseat of the car, Dixon, Rowdy, and Bennett rushed to the hospital, racing through the streets at a speed of eighty-five to ninety miles per hour. They passed a police officer, who chased the car until it ran off the road into a fire hydrant. The crash caused the victim's body to fall on the floor in the backseat of the car. The police officers ordered the men out of the car, and when the officers noticed the victim's body on the floor in the back, they called the rescue squad to attend to the victim.

The victim's body was transported to Southeastern General Hospital for an autopsy. Dr. Bob Andrews, a board-certified pathologist, performed the autopsy and determined that the victim died as a result of a gunshot wound to the left side of the head, just below the left ear. Andrews described the wound as being from left to right, in a straight horizontal direction, entering the head at a ninety-degree angle and passing through both hemispheres and main lobes of the brain. The autopsy revealed no evidence of any injuries to the victim's body caused by the car crash. At the time of his death, the victim's blood alcohol level was 30 milligrams per deciliter, the equivalent of .03 on a breathalyzer.

Officer Stewart McPhatter, an identification officer for the Robeson County Sheriff's Department, testified that he arrived on the scene shortly after the crash and observed the victim's body in the

backseat of the car. He searched the vehicle but did not find evidence of any weapons or ballistics inside the car.

Johnnie Leonard testified that on the night of 27 September 1992 he was at the Soul Train Lounge, where he saw both defendant and the victim. After the Soul Train Lounge was closed for the second time, he went to the parking lot. He saw his cousin, Jamie Jones, take a .22 rifle from the trunk of a red Monte Carlo and hand it to defendant, who loaded it. Leonard testified that he heard one shot fired and that he grabbed his own .38-caliber handgun and shot it into the air two times after he heard the first shot fired. Then he got into a burgundy Chevrolet Celebrity, driven by his friend Isaac Smith.

Tony Roberts testified that he saw defendant approach the victim's car, walk away several car lengths, lean on a car for leverage, and fire towards the victim's car. He saw defendant get into a car that had pulled up in front of the victim's car and blocked it. Defendant was laughing and calling the occupants of the victim's vehicle names.

Johnnie Leonard further testified that he and Isaac Smith picked up defendant and Jamie Jones in the burgundy Celebrity after the shooting. Leonard testified that defendant still had the rifle in his hands and that when he got into Smith's car, defendant told the other occupants that he had just "shot a m—— f—— in the neck." Leonard testified that since Jones did not want to walk with the rifle, he asked Leonard to hold the rifle for him and said that he would return for it later. Leonard consented and took the gun home. The next morning, after hearing that the victim was dead, Leonard told his father what had happened and turned the loaded rifle over to Detective Ricky Britt and Sheriff Bullard.

Defendant presented no evidence.

[1] Defendant first contends that the trial court committed reversible error by admitting, over defendant's objections, evidence of the victim's character for peacefulness and by permitting the prosecutor to argue this evidence to the jury during his closing argument. Specifically, defendant challenges the admission of evidence that the victim was not known to be a violent person or to carry a gun, that the victim was not involved in any altercations at the Soul Train Lounge the night of the murder, and that neither the victim nor any of his friends were armed with any weapons that evening. Defendant contends that this testimony was inadmissible character evidence pursuant to N.C.G.S. § 8C-1, Rule 404(a)(2). This rule prohibits the admission of

**STATE v. ALFORD**

[339 N.C. 562 (1995)]

evidence of the victim's peaceful character in a homicide case for the purpose of proving conduct in conformity therewith unless offered by the prosecution to rebut defense evidence that the victim was the first aggressor. N.C.G.S. § 8C-1, Rule 404(a)(2) (1986). As defendant did not introduce any evidence that the victim was the first aggressor, he contends that this evidence reflecting the peaceful nature of the victim was erroneously admitted in violation of his right to a fair trial. For the following reasons, we reject defendant's arguments.

Assuming arguendo that admission of the State's evidence, that the victim was not known to be a violent person or to carry a gun, was error, defendant cannot show prejudice as required by N.C.G.S. § 15A-1443(a). The other challenged evidence, that the victim was not in any altercations at the Soul Train Lounge the night of the murder and that neither the victim nor any of his friends were armed that night, was relevant and properly admitted. This evidence was not introduced as evidence of the peaceful nature of the victim, but was introduced to support a finding of premeditation and deliberation on the part of defendant. Premeditation and deliberation are generally not susceptible of direct proof, but are mental processes which may be inferred from circumstantial evidence surrounding a murder, including lack of provocation on the part of the victim. *State v. Keel*, 337 N.C. 469, 489, 447 S.E.2d 748, 759 (1994); *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Evidence that the victim was peaceful and unarmed the night of the murder was relevant to prove that the victim did not provoke defendant and that this murder was committed with premeditation and deliberation.

Additionally, this evidence was relevant to the State's theory for defendant's motive for murdering the victim. Although the State is not required to prove motive, evidence of the motive for a crime is competent evidence. *See State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). The State's theory was that the sole reason defendant shot the victim was that the victim was from Rowland; evidence that there was no provocation on the part of the victim was thus relevant to support this theory of defendant's motive.

Furthermore, the record reflects for each item of evidence objected to by defendant under this assignment of error, virtually the same evidence was admitted without objection at other times during the trial, either before or after defendant's objections were made. There-

fore, defendant waived his right to raise these objections on appeal. Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost. *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984); *State v. Maccia*, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984); *State v. Chapman*, 294 N.C. 407, 412-13, 241 S.E.2d 667, 671 (1978).

Although defendant objected at trial to the testimony of Anthony Pittman, the disc jockey at the Soul Train Lounge the night of the murder, that he had never seen the victim involved in any fights prior to the night of the murder, defendant waived his objection by later cross-examining Pittman about this same evidence. Normally, the objecting party does not waive an objection to evidence the party contends is inadmissible by trying to explain it, impeach it, or destroy its value on cross-examination. *State v. Adams*, 331 N.C. 317, 328, 416 S.E.2d 380, 387 (1992); *State v. Van Landingham*, 283 N.C. 589, 603, 197 S.E.2d 539, 548 (1973). However, the record in the instant case reveals that defendant made no attempt to explain, impeach, or destroy the value of Pittman's testimony; defendant merely asked Pittman for the same information and queried him briefly about his friendship with the victim. Thus, even if Pittman's testimony was error, defendant cannot show prejudice as he lost the benefit of his earlier objection to this testimony by eliciting testimony to the same effect from Pittman.

Applying the foregoing principles, we also hold that defendant waived his objection to the testimony of Mae Addison that she never knew her son to carry a gun since the next witness to be called was allowed to testify to the same effect without objection from defendant. Defendant also waived any objection to the testimony that the victim was peaceful and unarmed the night of the murder. Defendant raised no objection to the testimony of Gregory Dixon, the victim's cousin, who was the first witness to testify to this effect. Additionally, testimony that no one in the victim's group of friends was armed the night of the murder was elicited from several witnesses without objection. Thus, defendant also waived any objection he may have made to this testimony.

[2] Further, in connection with this assignment of error, defendant contends the trial court erred by failing to intervene *ex mero motu* to stop the prosecutor's improper closing argument to the jury. Defendant specifically argues that the prosecution should not have been

STATE v. ALFORD

[339 N.C. 562 (1995)]

allowed to argue that the evidence that the victim was a peaceful person who had been shot for no apparent reason was connected with the jury's determination of premeditation and deliberation on the part of defendant. Defendant argues that this argument erroneously implied that offering no reason for shooting a peaceful man indicates premeditation and deliberation. Defendant claims that this argument exceeded the scope of the evidence and encouraged the jury to convict him based on improper considerations of sympathy and pity for the victim evoked by the victim's peaceful nature.

Where there is no objection at trial to a jury argument, the standard of review to determine whether the trial court should have intervened *ex mero motu* is whether the allegedly improper argument was so prejudicial and grossly improper as to interfere with defendant's right to a fair trial. *State v. Sexton*, 336 N.C. 321, 362, 444 S.E.2d 879, 902, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994); *State v. Harris*, 308 N.C. 159, 169, 301 S.E.2d 91, 98 (1983). A prosecutor must be allowed wide latitude in the argument of hotly contested cases and may argue all the facts in evidence and any reasonable inferences that can be drawn therefrom. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). "A prosecutor's argument is not improper when it is consistent with the record and does not travel into the fields of conjecture or personal opinion." *Id.* In the instant case, the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu.*

The prosecutor did not exceed the scope of the evidence or reasonable inferences therefrom by referring in his closing argument to the victim's peaceful nature. Contrary to defendant's claim, evidence of the lack of provocation on the part of the victim was relevant to support a finding of defendant's premeditation and deliberation and to support the State's theory of motive. Additionally, as noted earlier, defendant had waived any objections to the introduction of this evidence by failing to object to the admission of same each time it was elicited during the trial. This assignment of error is overruled.

[3] Defendant next contends the trial court erred in failing to rule on his initial objection to an allegedly improper victim impact argument made by the prosecution during closing arguments. In his closing argument, the prosecutor mentioned that the victim was "[t]aken from two parents that care" and "who loved their son." Defendant claims that this argument was improper as it was made with the inten-

tion of evoking sympathy among the jurors for the victim's family. The trial court made no ruling on defendant's objection to these statements. Defendant claims this failure to rule denied him a fair trial for the reason that sympathy for the victim is an inappropriate consideration during guilt determination. Furthermore, the error and prejudice to defendant could have been corrected at the time had the trial court immediately ruled on his objection.

Defendant also contends that the trial court erred by failing to intervene *ex mero motu* to prevent the prosecution from commenting further on the impact the murder had on the victim's family. According to defendant, the trial court's failure to rule on his initial objection to these victim impact remarks encouraged the prosecutor to make further improper arguments, thereby compounding the prejudice to defendant. After defendant's objection, the prosecutor argued that it is a terrible thing "when you have to bury a child under these type circumstances." We reject defendant's contentions.

We note first that the trial court technically erred in not ruling on defendant's initial objection to the prosecutor's argument at trial. Any party is entitled as a matter of law to a ruling on an objection. *State v. Chapman*, 294 N.C. 407, 414, 241 S.E.2d 667, 671-72; *State v. Staley*, 292 N.C. 160, 167, 232 S.E.2d 680, 685 (1977). The trial court's failure to rule was tantamount to overruling such objection. However, for the reasons which follow, this error was harmless.

Counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911; *State v. Britt*, 288 N.C. 699, 711, 220 S.E.2d 283, 291 (1975). However, "the jury's decision must be based solely on the evidence presented at trial and the law with respect thereto, and not upon the jury's perceived accountability to the witnesses, to the victim, to the community, or to society in general." *State v. Boyd*, 311 N.C. 408, 418, 319 S.E.2d 189, 197 (1984), *cert. denied*, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985). During the guilt phase of a trial, the focus of the jury must be on guilt versus innocence; and arguments that emphasize inappropriate factors such as sympathy or pity for the victim are prejudicial. *State v. Oliver*, 309 N.C. 326, 360, 307 S.E.2d 304, 326 (1983).

In this case, the prosecutor's comments did not improperly emphasize sympathy or pity for the victim's family. Viewed in the context of his entire argument, these comments did not attempt to make sympathy for the victim or his family the focus of the jury's deliberation. The statements did not imply that the jury should consider

accountability to the victim's family or the community in reaching its verdict. *See State v. Brown*, 320 N.C. 179, 196, 358 S.E.2d 1, 13 (1987) (holding argument during guilt phase that the victim's family had only the jury to turn to for justice not so improper as to require intervention *ex mero motu*). Further, the record provides ample evidence to support defendant's first-degree murder conviction notwithstanding these remarks; therefore, these arguments could have had no prejudicial effect on the verdict. In the absence of a showing of prejudice, improper jury arguments do not require reversal. *See State v. Boyd*, 311 N.C. at 418, 319 S.E.2d at 197. This assignment of error is overruled.

[4] Defendant next contends that the trial court did not declare and explain the law arising on the evidence as required by N.C.G.S. § 15A-1232. Defendant argues that the trial court's instructions on felony murder failed to inform the jury that it must find all the elements of the underlying felony, discharging a firearm into occupied property, beyond a reasonable doubt. The trial court instructed the jury as follows:

> As to felony murder, I charge that for you to find the defendant guilty of first degree murder under the first degree felony murder rule, the State must prove four elements beyond a reasonable doubt. First, that the defendant discharged a firearm into occupied property. As a definition of discharging a firearm into occupied property, the willful or wanton and intentional discharge of a firearm into a vehicle which is occupied when the defendant knew that the vehicle was occupied by one or more persons is discharging a firearm into occupied property.
>
> The second element, that while discharging a firearm into occupied property, the defendant killed the victim with a deadly weapon.
>
> The third element, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.
>
> And fourth, that the discharging a firearm into the occupied property was committed by the use of a deadly weapon, firearm.

The final mandate to the jury was as follows:

> So, as to first degree murder under the first degree felony murder rule, if you find from the evidence beyond a reasonable

doubt that on or about the alleged date the defendant willfully or wantonly and intentionally discharged the firearm into an occupied vehicle, and that while discharging a firearm into the occupied property or vehicle the defendant killed the victim, and that the defendant's act was the proximate cause of the victim's death, and the defendant committed the discharging a firearm into the occupied property, that is, with a deadly weapon, a firearm, your duty would be to return a verdict of guilty of first degree murder under the felony murder rule. However, if you do not so find or if you have a reasonable doubt as to one or more of these things or these elements, then you will not return a verdict of guilty of first degree murder, and you would find the defendant not guilty as to that.

Defendant argues that this instruction was plain error. Defendant's contention is that while the instruction correctly defined the underlying felony, the instruction did not inform the jury that this definition contained separate elements that must be found beyond a reasonable doubt in order for the jury to find defendant guilty of felony murder. We disagree.

The extent to which the law needs to be explained in the jury charge depends on the facts and evidence presented in the case. In *State v. Hunter*, 290 N.C. 556, 227 S.E.2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L. Ed. 2d 539 (1977), this Court addressed a similar contention. In *Hunter*, the defendant was convicted of first-degree felony murder based on the underlying felony of attempted armed robbery. This Court held that the trial court's failure to set forth the essential elements of the underlying felony in its instructions as to what the State must prove to convict the defendant of being an accessory before the fact to felony murder was not prejudicial error when (i) the occurrence of the underlying felony was not disputed, (ii) the defendant failed to specifically request instructions on the underlying felony, (iii) the court did define the underlying felony, and (iv) the terms used to define the underlying felony were essentially self-explanatory. *Id.* at 579-80, 227 S.E.2d at 549-50.

In this case, defendant also failed to object to the instructions given at trial or to request elaboration; therefore, plain error analysis applies. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). As in *Hunter*, the occurrence of the underlying felony was not disputed in the instant case; defendant disputed only the identity of the perpetrator, and there is no evidence that anything other than the discharge of

the firearm into the vehicle caused the victim's death. Further, the trial court fully defined the underlying felony of discharging a firearm into occupied property. The trial judge defined discharging a firearm into occupied property as "the willful or wanton and intentional discharge of a firearm into a vehicle which is occupied when the defendant knew that the vehicle was occupied by one or more persons." The terms used in this definition were essentially self-explanatory. Following *State v. Hunter*, 290 N.C. 556, 227 S.E.2d 535, we hold that the trial court did not err in instructing on the burden of proof or the essential elements of discharging a firearm into occupied property as the underlying felony for felony murder. Hence, the instruction cannot be plain error.

**[5]** Additionally, defendant alleges that the trial court committed plain error by instructing the jury in the disjunctive about premeditated and deliberate murder and felony murder and by informing the jury that it could convict defendant under either or both theories. Defendant contends the jury could have interpreted the instructions to allow a conviction on a theory of first-degree murder not found by all the jurors beyond a reasonable doubt, in violation of his right to a unanimous jury guaranteed by Article I, Section 24 of the North Carolina Constitution and in violation of his rights to a fair trial and due process guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Defendant contends that these disjunctive instructions were fatally ambiguous as it is impossible to determine whether the jury unanimously found that defendant actually committed either premeditated and deliberate murder or felony murder or if different jurors convicted on the basis of different theories. In light of the actual instructions given to the jury, the verdict sheet returned by the jury, and the jury poll, we are not persuaded that the jury was misled by the instructions.

The actual instructions given by the trial court made it clear to the jury that it had to be unanimous on both the verdict and the basis for that verdict. After informing the jury that it could "find the defendant guilty of first degree murder on either or both of two theories[,] [t]hat is, on the basis of malice, premeditation and deliberation, or under the felony—first-degree felony murder rule," the trial court charged the jury on first-degree murder by premeditation and deliberation and then instructed on the elements of felony murder. The court then charged as follows:

So, members of the jury, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally killed the victim with a deadly weapon, and that this proximately caused the victim's death, and that the defendant intended to kill the victim, and that he acted with malice after premeditation and with deliberation, your duty would be to return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation. However, if you do not so find or if you have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation. Whether or not you find the defendant guilty of first degree murder on the basis of malice, premeditation and deliberation, you will also consider whether he is guilty of first degree murder under the first degree felony murder rule.

The court then gave the final mandate on felony murder and finally instructed the jurors, "You and each of you, that is, all 12 of you, must unanimously agree upon any verdict which you return."

Further, the verdict sheet actually returned by the jury and the jury poll conducted after the verdict was returned indicate that the jurors did not construe the disjunctive instructions to allow the jury to convict defendant of first-degree murder on a basis that was not unanimously found beyond a reasonable doubt. The verdict sheet clearly indicates that the jury found defendant guilty of both premeditated and deliberate murder and felony murder. When polled, each juror reiterated that he or she found defendant guilty of first-degree murder based on both theories.

In *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), we stated:

This Court has taken the position that: "Premeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." *State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 561 (1989) (citations omitted).

*Id.* at 221, 433 S.E.2d at 150-51. Hence, this case is distinguishable from *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), relied upon by defendant. In *Diaz* the Court held that a disjunctive instruction resulted in an ambiguous verdict since the Court could not determine

whether the jury unanimously convicted the defendant of a particular crime where each activity instructed on constituted a separate, discrete offense under the trafficking statute. *See also State v. Lyons*, 330 N.C. 298, 412 S.E.2d 308 (1991) (discussing cases holding that a disjunctive instruction resulted in an ambiguous verdict and cases holding that the disjunctive instruction was not error since the acts in the instruction were merely different means of committing the same crime). Defendant's contentions are without merit, and this assignment of error is overruled.

[6] Finally, defendant contends that the trial court erred in admitting into evidence over defendant's objection photographs depicting the victim's body in the backseat of a wrecked automobile. Defendant argues that the photographs did nothing to illustrate the testimony of any witnesses or issues germane to the crime of first-degree murder based on a shooting and were aimed solely at inflaming the jury. We disagree.

"Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). In a homicide case, photographs depicting the location and condition of the body at the time it was found are competent despite their portrayal of gruesome events which a witness testifies they accurately portray. *State v. Harris*, 323 N.C. 112, 127, 371 S.E.2d 689, 698 (1988). Whether photographic evidence is more probative than prejudicial lies within the sound discretion of the trial court, and the trial court's ruling should not be overturned unless it is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. at 285, 372 S.E.2d at 526-27.

In the instant case, the challenged photographs were used for illustrative purposes by several witnesses. The challenged photographs were used by Deputy McPhatter, who observed the body where it was located in the backseat of Mrs. Addison's wrecked Oldsmobile, to illustrate his testimony about the location and condition of the body when first observed by law enforcement officers. The photographs also illustrated the testimony of Jeffrey Rowdy and Gregory Dixon that they put the victim in the backseat of Mrs.

Addison's Oldsmobile after the shooting and that he was in the back-seat as they proceeded to the hospital.

Nothing suggested that the photographs were used to incense the jurors or incite their prejudices and passions against defendant. The fact that these photographs depicted the intervening car wreck was irrelevant since the evidence at trial showed that the victim's body sustained no further injuries as a result of this accident. The State made no attempt to draw undue attention to these photographs, which were not used in the closing arguments or viewed by the jury once deliberations had begun. In light of the foregoing principles, we cannot say that in the instant case the trial court's decision to admit the photographs was manifestly unsupported by reason, and we conclude that the trial court did not err in admitting the photographs.

For all the foregoing reasons, we conclude that defendant received a fair trial free of prejudicial error.

NO ERROR.

Justices LAKE and ORR did not participate in the consideration or decision of this case.