An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-634
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

v.                                    Edgecombe County
                                      No. 11 CRS 53248
DONALD TABRON


Appeal by defendant from judgment entered 30 October 2012 by Judge W. Russell Duke, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 20 November 2013.

>*Attorney General Roy Cooper, by Assistant Attorney General Alexandra Gruber, for the State.*

>*Unti & Lumsden LLP, by Margaret C. Lumsden, for defendant appellant.*


McCULLOUGH, Judge.

Donald Tabron ("defendant") appeals from his conviction for taking indecent liberties with a child. For the following reasons, we find no prejudicial error.

## I. Background

On 3 January 2012, defendant was indicted by an Edgecombe County Grand Jury on one count of statutory rape and one count

of taking indecent liberties with a child. These charges originated from accusations by the alleged victim, S.A. A superseding indictment was subsequently entered on 24 September 2012 to clarify the statutory rape charge.[1] Defendant's case came on for trial on 29 October 2012 in Edgecombe County Superior Court, the Honorable W. Russell Duke, Jr., Judge presiding.

The State's evidence at trial tended to show that, while growing up, S.A. often stayed with Renee Tabron and defendant, her grandmother and step-grandfather, respectively, on weekends and over the summer. At some point in 2006, when S.A. was in the ninth grade, S.A. moved in with Renee and defendant permanently. Although Renee and defendant had a four bedroom house, the house was often full because Renee was a licensed therapeutic foster parent and cared for several children in addition to S.A. As a result, S.A. would sometimes sleep on an air mattress in the living room.

When questioned as to when her relationship with defendant turned sexual, S.A. responded when she was thirteen. S.A. then testified about the first time defendant inappropriately touched

---

[1] The superseding indictment elevated the statutory rape charge from a Class C felony to a Class B1 felony because "defendant [was] at least six years older than the [alleged victim.]" N.C. Gen. Stat. § 14-27.7A (2013).

her. S.A. recalled that she was staying with Renee and defendant for the weekend and was sleeping on the air mattress when defendant entered the room, sat in a recliner, placed her on his lap, and began rubbing her chest. It was late and everyone else was in bed at the time.

Upon further questioning, S.A. testified that subsequent to the initial touching, defendant had sexual intercourse with her in the summer of 2006. S.A. was still thirteen at the time. S.A. was able to describe the event in detail and recalled defendant told her not to tell anyone because it would mess everything up for her grandmother and herself. S.A. testified similar acts continued until she was sixteen years old, at which time she told defendant to stop because it was not right.

S.A. did not tell anyone about what had happened with defendant until Renee confronted S.A. about her sexual orientation in 2011. At that point, S.A. told Renee that defendant had touched her and had sex with her.

In addition to S.A.'s testimony, Renee and one of Renee's daughters, Shawanna Battle, testified that defendant admitted to what he had done. Renee first testified that when she confronted defendant with S.A.'s accusations, defendant admitted to a sexual relationship with S.A., but claimed S.A. was the

aggressor and he was weak. Shawanna then testified that several days after Renee informed her of S.A.'s accusations, defendant and Renee unexpectedly visited her at her home, at which time defendant proceeded to apologize for what he did wrong. Although defendant did not specifically reference or detail his sexual relationship with S.A., Shawanna testified she knew that was what defendant was apologizing for because he referred to S.A., said he was there to talk about what Renee told her about S.A., and stated it was going to be a big mess when S.A.'s mother found out.

Following the presentation of the State's case, defendant took the stand in his own defense and denied S.A.'s allegations. Defendant further denied admitting anything to Renee or Shawanna.

The case was given to the jury on 30 October 2012 and after a brief period of deliberation, the jury returned a verdict finding defendant not guilty of statutory rape and guilty of taking indecent liberties with a child. At sentencing, the trial court imposed a sentence of sixteen (16) to twenty (20) months imprisonment. Additionally, because defendant was convicted of a reportable conviction involving the sexual abuse of a minor, the court ordered defendant to register as a sex

offender for a period of thirty (30) years upon his release from imprisonment.

Defendant gave oral notice of appeal in open court immediately after he was sentenced.

## II. Discussion

On appeal, defendant challenges his conviction for indecent liberties with a child on the bases that the State's closing argument was improper, irrelevant and unfairly prejudicial evidence was admitted for jury consideration, and he received ineffective assistance of counsel.

## (1) Closing Argument

In defendant's first argument on appeal, defendant contends the trial court erred in allowing the State to remark during its' closing argument that "[h]e admitted to some other affair which he's denying that other affair also now[.]" Specifically, defendant argues the State's statement was a mischaracterization of the evidence and, in any event, was irrelevant and inadmissible in the case.

At the outset, we note defendant failed to object to the State's closing argument at trial.

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so

> grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted); *see also State v. Alford*, 339 N.C. 562, 571, 453 S.E.2d 512, 516 (1995) ("[T]he standard of review to determine whether the trial court should have intervened *ex mero motu* is whether the allegedly improper argument was so prejudicial and grossly improper as to interfere with defendant's right to a fair trial.").

"A lawyer's function during closing argument is to provide the jury with a summation of the evidence, which in turn serves to sharpen and clarify the issues for resolution by the trier of fact, and should be limited to relevant legal issues." *Jones*, 355 N.C. at 127, 558 S.E.2d at 103 (citations and quotation marks omitted). "[C]ounsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn

from that evidence." *State v. Richardson*, 342 N.C. 772, 792-93, 467 S.E.2d 685, 697 (1996).

In the present case, the State remarked that "[defendant] admitted to some other affair which he's denying that other affair also now[.]" As the State concedes, this statement was a mischaracterization of the evidence. At trial, there was no testimony that defendant had "some other affair[.]" Both Renee's and defendant's testimony shows that when Renee confronted defendant about cheating, defendant believed Renee was referring to a woman that he had performed some work for. Defendant, however, testified that he told Renee he was not having an affair with the woman.

Now on appeal, defendant contends the trial court committed reversible error by failing to intervene *ex mero motu* and exclude the State's mischaracterization of the evidence during closing arguments. Defendant argues that absent the mischaracterization, "the jury would have found him more credible and would have been more likely to acquit him." In support of his argument defendant cites *State v. Maxwell*, 96 N.C. App. 19, 384 S.E.2d 553 (1989).

In *Maxwell*, the defendant "was convicted on one charge of taking indecent liberties with a minor and two separate charges

of first-degree statutory rape." 96 N.C. App. at 20, 384 S.E.2d at 554. On appeal, this Court considered "whether the trial court erred in admitting testimony of alleged prior bad acts of a sexual nature committed by [the] defendant[,]" *Id*. at 22, 384 S.E.2d at 555, and granted the defendant a new trial, holding the inflammatory evidence was highly prejudicial and should not have been admitted under N.C. Gen. Stat. § 8C-1, Rule 404. *Id*. at 25, 384 S.E.2d at 557. Specifically regarding evidence of an extramarital affair, this Court stated "[t]here was no connection between evidence of defendant's alleged affair and the crimes with which he was charged. This evidence . . . does little more than impermissibly inject character evidence . . . ." *Id*.

Relying on *Maxwell*, defendant argues the same result is warranted in this case, adding that the prejudice is even worse as a result of the State's mischaracterization of the testimony.

While we acknowledge the *Maxwell* holding and agree that evidence of an unrelated extramarital affair would be inadmissible in this case to prove the charges against defendant, the issue decided in *Maxwell* is not the same as the issue presently before this Court. This first issue on appeal concerns the State's improper remark during its closing

argument, not the admission of evidence at trial as in *Maxwell*. Upon review of the State's closing argument and the rest of the evidence presented at trial, we hold the single remark by the State, although a mischaracterization of the evidence and erroneous, was not "so prejudicial and grossly improper as to interfere with defendant's right to a fair trial." *Alford*, 339 N.C. at 571, 453 S.E.2d at 516.

## (2) Testimony

In the second and third issues on appeal, defendant contends the trial court erred in admitting certain testimony into evidence at trial. Specifically, defendant objects to the admission of testimony regarding defendant's bad character and S.A.'s pregnancy on grounds that the testimony was irrelevant and unfairly prejudicial.

Pursuant to N.C. Gen. Stat. § 8C-1, Rules 401 and 402, "[t]he admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000) (citation and quotation marks omitted). Even when relevant, the trial court may exclude evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule

403 when "its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

Relevancy is a question of law subject to *de novo* review. *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010). Nevertheless, "'the trial court's rulings on relevancy . . . are given great deference on appeal[]'" because "the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable[.]" *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quoting *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991)). "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)).

In the present case, however, defendant failed to object to the admission of the testimony now challenged on appeal. Thus, defendant has not preserved these issues for appellate review. *See* N.C.R. App. P. 10(a)(1) (2014) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the

specific grounds for the ruling the party desired the court to make . . . .").

> In criminal cases, [however,] an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

As an initial matter, the State contends defendant failed to "specifically and distinctly" allege plain error. Contrary to the assertions in defendant's reply brief, there is no mention of "plain error" in defendant's brief.[2] Defendant does,

---

[2]Defendant argues he specifically and distinctly asserted plain

however, acknowledge that he failed to object to the admission of the testimony at trial and cites *State v.* Odom, 307 N.C. 655, 300 S.E.2d 375 (1983), for the plain error standard of review. Although the better practice is to explicitly assert the trial court plainly erred, as defendant did in his initial brief, given the circumstances in this case, we believe defendant has sufficiently alleged plain error. Thus, we address defendant's arguments.

## Bad Character Testimony

Throughout Renee's testimony at trial, Renee described how the events following S.A.'s allegations unfolded. During this testimony, Renee made statements which defendant now claims should have been excluded as irrelevant and highly prejudicial evidence of his bad character. Specifically, defendant identifies five statements by Renee that show the following: (1) defendant cleaned out their bank account; (2) defendant intended to have a girlfriend move into the house; (3) defendant called the police to remove her from the house; (4) in 2010,

---

error and quotes portions of his brief filed on 23 July 2013. However, by 26 August 2013 order, this Court allowed defendant's 24 August 2013 motion designated Motion to Withdraw Defendant-Appellant's Brief and to Submit a New Brief. Thus, defendant's 23 July 2013 brief was stricken and a brief attached to defendant's motion was substituted.

defendant began to tell her something had happened but did not tell her what it was; and (5) the allegations against defendant resulted in a loss of income from the foster care business. Defendant further contends "this parade of horribles is certain to have prejudiced the jury[]" and that absent the testimony, the "jury would have weighed only the relevant evidence regarding the charges against [d]efendant and would probably have acquitted [defendant]."

In response, the State admits the testimony concerning the bank account, defendant's girlfriend, and the involvement of the police is arguably irrelevant. Nevertheless, the State contends the testimony does not rise to the level of plain error. In regard to the remaining two statements, the State contends the testimony was relevant to support Renee's testimony that defendant later admitted the alleged abuse and explain why S.A. did not come forward immediately with the allegations.

Although we find merit to the State's arguments that portions of the challenged testimony were relevant, we need not delve further into the issue. Assuming arguendo that all the statements were irrelevant to any fact of consequence in the case, we hold the admission of the testimony was not plain error given the considerable evidence against defendant. With the

exception of defendant's conclusory statement, "[if] Renee Tabron had been prevented from vilifying [d]efendant, a jury would have weighed only the relevant evidence regarding the charges against [d]efendant and would probably have acquitted him[,]" defendant has failed to show "the error had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

### Evidence of Pregnancy

At trial, S.A. read a statement she provided to police during their investigation. In the statement, S.A. stated that "this started when I was thirteen-years-old and I had got pregnant going on fourteen-years-old." S.A. then indicated that she lost the baby six to seven months into the pregnancy. On cross-examination, defendant inquired further into the pregnancy, questioning S.A. about statements she made concerning the identity of the father. In response, S.A. acknowledged that she told people that the father was a boy she was talking to; yet, S.A. elaborated further on redirect that she told that to people in order to protect defendant.

Defendant now claims that because there was no physical evidence of sexual abuse and because S.A.'s testimony concerning the number of incidents was not entirely credible, the State

presented testimony about S.A.'s 2006 pregnancy and subsequent miscarriage to bolster her accusations. Despite failing to object at trial, defendant now objects to the suggestions that the child was defendants and defendant had a role in having the body cremated to cover up the sexual abuse. Specifically, defendant argues that "to the extent the evidence was relevant, its prejudicial effect outweighed its probative value." Had the jury not considered the testimony concerning the pregnancy, defendant contends, the jury would have reached a different verdict.

At the outset, we hold the evidence regarding S.A.'s pregnancy relevant because if defendant was the father, defendant inevitably committed the crime of statutory rape. *See* N.C. Gen. Stat. § 14-27.7A(a) ("A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse . . . with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.").

Defendant's argument, however, focuses on the prejudicial nature of the testimony outweighing the probative value. Defendant contends that while the prejudicial nature of the evidence was great, the evidence had little probative value

because "S.A. is the only source for the argument that the baby was [d]efendant's, and she made that allegation for the first time in connection with [the] case." Defendant further points out that S.A. did not tell her mother who the father was and told others that the father was a boyfriend. Based on what defendant contends is "overwhelming" evidence that the defendant was not the father, defendant contends the trial court should not have admitted the testimony.

Although it is arguable that the evidence may have been more prejudicial that probative, we do not address the argument. Whether or not the trial court abused its discretion under N.C. Gen. Stat. § 8C-1, Rule 403 when weighing the probative and prejudicial values of the evidence is not reviewed by this Court for plain error. *See State v. Cunningham*, 188 N.C. App. 832, 837, 656 S.E.2d 697, 700 (2008) ("The North Carolina Supreme Court has specifically refused to apply the plain error standard of review 'to issues which fall within the realm of the trial court's discretion[.]'" (quoting *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000)).

Besides, assuming arguendo the trial court erred in admitting the evidence of S.A.'s pregnancy, defendant has not demonstrated the error amounts to plain error. Defendant merely

states that the evidence was "inflammatory and doubtless led to the jury's convicting [him] under the influence of emotions. If the jury had to rely only on S.A.'s questionable testimony, the jury would have reached a different verdict." As stated above, there is considerable evidence of defendant's guilt. Moreover, it stands to reason that the jury did not believe defendant was the father of the baby because if the jury believed defendant was the father, the jury would have convicted defendant of statutory rape. Thus, we hold it is not probable that the error had an impact on the jury's verdict.

### (3) Ineffective Assistance of Counsel

In the final issue on appeal, defendant contends he received ineffective assistance of counsel. Defendant's assertions of ineffective assistance of counsel stem from his counsel's failure to present testimony he claims would have been beneficial to his defense and his counsel's failure to object to the testimony challenged on appeal.

"It is well established that ineffective assistance of counsel claims 'brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required[] . . . .'" *State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (quoting *State v.*

*Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001)), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 80 (2005).

> To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006). This Court has recently explained,

> [a]s a general proposition, reviewing courts do not second-guess the strategic or tactical decisions made by a defendant's counsel. For that reason, in evaluating ineffective assistance claims stemming from challenges to strategic and tactical decisions made prior to and during trial, a defendant's trial counsel is given wide latitude . . . and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear. The deference shown to a defense attorney's strategic and tactical decisions stems from an acknowledgement that [t]here are countless ways to provide effective assistance in any given case and

that [e]ven the best criminal defense attorneys would not defend a particular client in the same way. As a result, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*State v. Pemberton*, _ N.C. App. _, _, 743 S.E.2d 719, 724-25 (2013) (citations and quotation marks omitted) (alterations in original). "Relief should be granted only when counsel's assistance is so lacking that the trial becomes a 'farce and mockery of justice.'" *State v. Pratt*, 161 N.C. App 161, 163, 587 S.E.2d 437, 439 (2003) (quoting *State v. Montford*, 137 N.C. App. 495, 502, 529 S.E.2d 247, 252 (2000)).

Failure To Offer Further Testimony Of Freda Noel

In defendant's presentation of the evidence, defendant's counsel called Freda Noel, defendant's ex-wife to the stand. Defendant's counsel then briefly questioned Freda about a conversation she had with S.A. about the pregnancy. Freda testified that S.A. told her the father was a boy at school.

Now on appeal, defendant claims that his counsel's performance was deficient because counsel failed to inquire further into Freda's conversation with S.A. Specifically, defendant argues Freda gave compelling testimony during *voir dire* that should have been elicited before the jury. This testimony included statements by Freda that S.A. told her the

pregnancy was planned with a boy at school and that she was upset that the boy had left her. Defendant argues there is no strategic reason for not presenting the testimony. We disagree.

A full review of the record indicates that the admissibility of S.A.'s statements about the pregnancy and father was argued to the trial court. During these arguments, the State noted it did not object to the admission of testimony that S.A. made statements that the father was someone other than defendant. The State, however, was concerned that evidence of outside acts would be admitted in violation of N.C. Gen. Stat. § 8C-1, Rule 412. In response, defendant's counsel acknowledged that he would not get into the specifics, but only wanted to elicit testimony that S.A. told defendant and others that the father was a boyfriend or a boy at school. The trial court agreed to allow the testimony of S.A.'s statement only.

Considering the trial court's ruling, we hold defendant's counsel did not fall below an objective standard of reasonableness when he did not further inquire into Freda's conversation with S.A. Moreover, given the jury did not convict defendant of statutory rape, we find it unlikely the admission of additional testimony from Freda would have resulted in a different result.

## Failure To Offer Evidence Of S.A.'s Sexual Orientation

Defendant further argues that his counsel's performance was deficient because trial counsel failed to present evidence of S.A.'s sexual orientation after the State insinuated S.A.'s homosexuality was the result of defendant's wrongful conduct. Defendant contends the evidence supported an alternative theory that S.A. may have used the allegations against defendant to distract Renee from her sexual orientation.

While the evidence may support an alternative theory of the case or motive behind S.A.'s allegations, defendant has a heavy burden to show that counsel's strategic decision not to pursue the theory or motive was error. Defendant has not met that burden in this case where it is possible that further inquiry into S.A.'s sexual orientation could have further harmed defendant's case.

## Failure To Object To Evidence At Trial

In defendant's final argument, defendant contends trial counsel's failure to object to the admission of the evidence challenged above amounted to ineffective assistance of counsel. Having determined that some of the admitted testimony was irrelevant, it is arguable that defendant's counsel's performance fell below an objective standard of reasonableness.

Nevertheless, where there is compelling evidence of defendant's guilt and defendant has not shown the admission of the evidence had a probable impact on the jury's verdict, defendant cannot show that but for his counsel's failure to object, there is a reasonable probability the result of the case would have been different.

## III. Conclusion

Based on the discussion above, we hold the improper closing argument and the admission of the challenged evidence was not so prejudicial, even considering the cumulative effect, to warrant reversal of defendant's conviction. Furthermore, we hold defendant was not denied the effective assistance of counsel.

No prejudicial error.

Judges ELMORE and DAVIS concur.

Report per Rule 30(e).