**STATE v. KIRKLAND**

[119 N.C. App. 185 (1995)]

STATE OF NORTH CAROLINA v. CEASAR B. KIRKLAND

No. 933SC1225

(Filed 6 June 1995)

1. **Evidence and Witnesses § 754 (NCI4th)— failure to rule on motion to suppress—admission of objectionable evidence—harmless error**

   Though the trial court erred in failing to rule on defendant's motion to suppress evidence seized during a search and then permitting testimony regarding evidence which was the subject of the motion, such error was harmless where there was evidence from a number of witnesses that defendant had committed the robbery in question. N.C.G.S. §§ 15A-977(c) and (d).

   **Am Jur 2d, Appeal and Error § 806.**

2. **Grand Jury § 30 (NCI4th)— jury challenge based on racial discrimination—timeliness**

   The trial court did not err by summarily denying defendant's motions to compel disclosure of jury records, to appoint expert witnesses to assist him in investigating and preparing statistics concerning jury selection procedures to support his motion to quash, and to quash the indictment, since the motion to quash was not timely made, and defendant did not make the threshold showing of specific need required for the appointment of an expert.

   **Am Jur 2d, Grand Jury §§ 21 et seq.**

   Judge WYNN dissenting.

Appeal by defendant from judgment entered 5 February 1993 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 28 September 1994.

The evidence presented at defendant's trial tended to show the following. Around 1:00 a.m. on 2 January 1991, a car pulled up to the order stand of a Burger King restaurant in Greenville. After placing an order the driver pulled up to the window, cancelled the order, and talked with Angelique Parker, a Burger King employee. Selina Benson, assistant manager of the Burger King, identified defendant as the driver of the car.

After the restaurant closed for the night, Ms. Benson began counting the money in her office when she looked up and saw a man wearing a maroon and white-striped mask who was carrying a gun and a plastic bag. The man shoved Ms. Benson, warned the other employees not to move, and demanded money. An employee approached the robber who hit him with the gun and threatened to shoot if anyone moved again. Ms. Benson could only see the robber's eyes and mouth. She gave him approximately $2000 from the register, and the robber left. Ms. Benson ran out the back door and saw the robber jump into a car as it sped away. Ms. Benson testified that this car was the same one she had seen earlier driven by defendant. She stated that she identified a photograph of defendant as having "the eyes" of the robber.

Ms. Parker testified that both she and her husband, Jeffrey DeWitt, were employed by the Burger King. Several days before the robbery, Jeffrey, his sister Vicky DeWitt, and defendant discussed robbing the Burger King with Ms. Parker. They wanted Ms. Parker to let them in after the restaurant closed but she refused.

On the night of the robbery, Ms. Parker worked the 4:00 p.m. to midnight shift. Ms. Parker testified that between 10:30 and 11:00 p.m. a car driven by defendant pulled up to the restaurant's drive-in window. Vicky DeWitt and Lennon Smith, a friend of defendant, were in the car, and Mr. Smith asked Ms. Parker if she was ready to leave. She replied that she would not get off work until after midnight. Ms. Parker testified that the car defendant drove was owned by Pamela Harper who dated Reggie DeWitt, Ms. Parker's brother-in-law.

After the robbery, Ms. Parker went to defendant's apartment. Vicky, Jeffrey, and Reggie DeWitt, and defendant were present. Ms. Parker went into Ms. DeWitt's room and saw money scattered around. When Ms. Parker asked where the money had come from, her friends said that they "did Burger King." Defendant was laughing and passing out money.

Lennon Smith testified that he went with defendant to the Burger King and that defendant entered through the back door of the restaurant with an empty bag in his hand. Mr. Smith said defendant returned about fifteen minutes later with a toboggan over his head, carrying a full bag. Mr. Smith testified that defendant said, "Hurry up. Take off. I just robbed Burger King."

STATE v. KIRKLAND

[119 N.C. App. 185 (1995)]

Detective D. R. Best of the Greenville Police Department investigated the robbery. Detective Best testified that Helen Yvette Spell, a Burger King employee, saw the robber without his mask and identified Reggie DeWitt from a photographic array as the robber. Ms. Spell later recanted, stating that her reason she chose DeWitt from the photographs was because she had seen him in the restaurant with his brother earlier that night. Ms. Parker and Mr. Smith both testified that they each made false statements to Detective Best before stating that defendant had committed the robbery.

Defendant proceeded *pro se.* He presented evidence that he was jailed for eight months before posting bond and then fled the state. After five months, defendant returned to face trial on the robbery charge. Defendant was convicted and sentenced to fourteen years imprisonment. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lorinzo L. Joyner, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defenders Benjamin Sendor and Charlesena Elliott Walker, for defendant appellant.*

ARNOLD, Chief Judge.

[1] Defendant assigns error to the trial court's failure to rule on defendant's motion to suppress and then permitting testimony regarding evidence which was the subject of the motion. Under N.C. Gen. Stat. § 15A-977, a motion to suppress is not subject to a summary denial where the defendant has alleged a legal basis for the motion and has provided a supporting affidavit. N.C. Gen. Stat. § 15A-977(c) (1988); *State v. Breeden,* 306 N.C. 533, 293 S.E.2d 788 (1982). "If the motion is not determined summarily the judge must make the determination after a hearing and finding of facts." N.C. Gen. Stat. § 15A-977(d) (1988).

In the instant case, defendant made a proper motion to suppress evidence seized by the police from a search of his apartment, including approximately $150 in cash. In considering defendant's motion, the trial judge rendered the motion moot upon the State's assurance that it would not introduce any evidence arising out of the search pursuant to the warrant. During the State's case, however, testimony was elicited from Detective Best as to whether any of the money from the robbery was recovered. Over defendant's objection, Best responded,

STATE v. KIRKLAND

[119 N.C. App. 185 (1995)]

"Yes, sir. There was just over $100—$140 or $50 recovered, pursuant to that search warrant."

We agree with defendant that the trial court erred by admitting Detective Best's testimony concerning the money without first having conducted a hearing to determine the admissibility of such evidence. *Breeden*, 306 N.C. 533, 293 S.E.2d 788; N.C. Gen. Stat. §§ 15A-977(c) and (d). However, the error was harmless beyond a reasonable doubt.

A violation of the defendant's rights under the United States Constitution is presumed prejudicial unless the State proves and the appellate court finds that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (1988). The State's evidence shows that although Angelique Parker and Lennon Smith admitted having lied to the police, both Parker and Smith recanted those statements and testified before the jury that defendant had committed the robbery. Significantly, both witnesses said they had lied because they had been threatened. Furthermore, Parker and Smith had already testified prior to Detective Best's testimony that money from the robbery was in #13 Pinehurst Apartments shortly after the robbery. Moreover, Detective Best was not the only impartial witness, as suggested by the dissent. Selina Benson, the assistant manager, described in detail how she was confronted by the robber and how she carefully observed every exposed feature of his face. Thereafter, by covering the bottom half of faces shown to her in a photographic lineup, she instantly identified defendant as the robber, stating, "Without a doubt, these are the eyes." Therefore, in light of this and other evidence presented at trial, we find that the State has met its burden in demonstrating that the error was harmless.

[2] Defendant next contends that the trial court erred by summarily denying his motions to compel disclosure of jury records, to appoint expert witnesses, and to quash the indictment. Defendant argues that the indictment should have been quashed because the grand jury foreman, the grand jury, and the petit jury were unlawfully selected on the basis of race. Accordingly, he moved to inspect relevant jury records, and further motioned for appointment of an expert witness to assist him in investigating and preparing statistics concerning jury selection procedures to support his motion to quash.

N.C. Gen. Stat. § 15A-955 (1988) allows the trial court, upon defendant's motion, to dismiss an indictment when there is ground for a challenge to the grand jury array. *State v. Lynch*, 300 N.C. 534, 268 S.E.2d 161 (1980). This motion must be made at or before the

arraignment or it is waived. *Id.*; N.C. Gen. Stat. § 15A-952 (1988). Defendant was arraigned on 6 May 1991, and the motion to quash was not made until 1 February 1993; therefore, the motion was not timely made. We also find that defendant did not make the threshold showing of specific need required for the appointment of an expert to assist him in his investigation of racial discrimination in jury selection. *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988); *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986). This assignment of error is overruled.

Defendant failed to preserve any of his remaining assignments of error for appellate review. N.C.R. App. P. 10(b)(1) (1995). However, we have reviewed these assignments of error and find defendant has received a fair trial free from prejudicial error.

No error.

Judge COZORT concurs.

Judge WYNN dissents with separate opinion.

Judge WYNN dissenting.

Because I cannot say that the erroneous admission of testimony regarding the search of defendant's apartment was harmless beyond a reasonable doubt, I respectfully dissent.

Defendant was charged with one count of armed robbery with a dangerous weapon for the robbery of a Burger King restaurant in Greenville, North Carolina. Defendant made a proper motion to suppress evidence seized by the police from a search of his apartment. After the State assured the trial court that it would not introduce any evidence from the search, the court ruled that the motion to suppress was moot. During the State's examination of Detective Best, however, he testified that money from the robbery was recovered after a search of defendant's apartment. The majority finds, and I agree, that the admission of this testimony was constitutional error which requires a new trial unless the State shows that the error was harmless beyond a reasonable doubt. *State v. Swindler*, 339 N.C. 469, 450 S.E.2d 907 (1994); *State v. Bozeman*, 115 N.C. App. 658, 446 S.E.2d 140 (1994); N.C. Gen. Stat. § 15A-1443(b) (1988). Overwhelming evidence of guilt may render a constitutional error harmless. *State v. Autry*, 321 N.C. 392, 364 S.E.2d 341 (1988); *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982). I conclude

STATE v. KIRKLAND

[119 N.C. App. 185 (1995)]

that the evidence of defendant's guilt is not overwhelming and that he should receive a new trial.

At trial, Angelique Parker, who worked for the Burger King, testified that her husband, Jeffrey DeWitt, his sister, Vicky DeWitt, and defendant discussed robbing the Burger King. Ms. Parker made two statements to the police. In her first statement, she said that defendant had robbed the Burger King. In her second statement she said that she had lied in her first statement after being threatened by Greenville Police Detective Best and that defendant was not involved in the robbery. At trial, Ms. Parker said her second statement was a lie and that she had made it because her brother-in-law, Reggie DeWitt, threatened her life and the lives of her parents.

Lennon Smith testified that he rode with defendant, Reggie DeWitt, and defendant's girlfriend to the Burger King on the night of the robbery. Mr. Smith testified that defendant left the car and committed the robbery. Mr. Smith told the police in a written statement, however, that Reggie DeWitt had planned and executed the robbery. He testified that he was "probably threatened" when he made the statement to the police.

Selina Benson, the manager of the Burger King, testified that she recognized defendant in a photographic array as the robber by his eyes. Detective Best testified that a Burger King employee, Helen Yvette Spell, saw the robber without his mask and identified him as Reggie DeWitt from a photographic array. Detective Best stated that Ms. Spell recanted her identification and she was not available at trial.

While there is evidence that defendant was involved in the robbery of the Burger King, the evidence that he was the actual robber is weak. Ms. Parker and Mr. Smith repeatedly lied to the police and their credibility is questionable. Ms. Benson's testimony that she recognized defendant as the robber by his eyes is probative but not overwhelming. Therefore, I cannot conclude that the error of admitting Detective Best's testimony that he found money from the robbery in defendant's apartment was harmless beyond a reasonable doubt. Constitutional error is not harmless beyond a reasonable doubt if " 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman v. California*, 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, *reh'g denied*, 386 U.S. 987, 18 L. Ed. 2d 241 (1967) (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173 (1963)). I vote for a new trial.