An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-446

Filed 16 July 2025

Carteret County, Nos. 21CRS52674-75 21CRS52680

STATE OF NORTH CAROLINA

v.

HUBERT LEE MONK, JR.

Appeal by defendant from judgment entered 13 July 2023 by Judge Clinton D. Rowe in Carteret County Superior Court. Heard in the Court of Appeals 30 April 2025, sitting in the historic Cumberland County Courthouse, Fayetteville.

*Attorney General Jeff Jackson, Special Deputy Attorney General Robert P. Brackett, Jr., for the State.*

*Blau & Hynson, PLLC, by Daniel M. Blau, for the defendant-appellant.*

TYSON, Judge.

Hubert Lee Monk, Jr. ("Defendant") appeals from judgments entered after a jury found him guilty of trafficking in opium/heroin by possession and by manufacture and of possession of a firearm by a convicted felon. We deny Defendant's motion for appropriate relief and discern no prejudicial error.

## I. Background

Carteret County Sheriff's Detectives James Pittman, Dallas Rose, and Scott Moots were conducting surveillance in a Food Lion grocery store's parking lot located in Newport on 21 October 2021. The officers knew from prior transactions and experiences the lot was an area known for illegal drug activity. Detective Pittman observed a black Jeep vehicle drive through the parking lot with the driver looking around. Detective Pittman became suspicious a "potential deal" was about to occur.

The driver of the Jeep left the parking lot and proceeded slowly down the road toward a Dollar General store. Detective Pittman observed the Jeep parked in the Dollar General's parking lot with a female standing outside of the driver's side window. Detective Pittman sent messages by radio to Detectives Rose and Moots for assistance, and they joined him there. All three detectives identified Defendant as the driver of the Jeep.

A gold sports utility vehicle pulled into the Dollar General near the Jeep. An individual, whom Detective Pittman recognized as Michael Piner ("Piner"), exited the vehicle and approached the Jeep. Piner left the Jeep and got inside of a green Nissan vehicle.

A "very, very short time later," the gold sports utility vehicle left Dollar General's parking lot, followed the Jeep, and headed towards the Compass Landing apartment complex. Detectives Rose and Moots believed a narcotic sale had occurred and approached the Green Nissan. The detectives observed Piner sitting in the passenger seat and a woman in the driver's seat. The detectives also saw drug

paraphernalia and a baggy with powder in the woman's lap. Another woman was sitting in the back seat. Both women and Piner told Detectives Rose and Moots they had just purchased the narcotics from Defendant while he was in the Jeep.

Detective Pittman followed the gold sports utility vehicle and initiated a traffic stop. The driver admitted to possessing heroin and told Detective Pittman he had "got it from Piner." Detectives Pittman, Moots, and Rose began searching the nearby area and located the Jeep parked in the parking lot of the Compass Landing apartments.

Four days later, Detectives Pittman, Moots, and Rose observed the Jeep leave the Compass Landing Apartments and followed it on Highway 70, travelling toward Morehead City. The Jeep made numerous stops along the way. On one occasion, the front seat passenger got out of the Jeep and met someone at a residence.

The officers activated their blue lights and initiated a traffic stop of the Jeep. Defendant did not immediately heed the lights and sirens and pull over. Detective Pittman maneuvered his vehicle around Detective Rose's vehicle to cut off Defendant's vehicle.

Detective Rose later testified he had observed the driver of the Jeep not wearing a seatbelt. Detective Rose noticed "an extreme amount of movement inside the vehicle" and alerted Detective Pittman. Detective Rose observed Defendant's arm moving "in the motion of pulling or shoving something between his seat and the door."

Detective Pittman testified he had stopped the Jeep because Defendant had an

outstanding warrant and an invalid driver's license.  Detective Pittman removed Tracy Howard ("Howard") from the front passenger seat.  Howard told Detective Pittman she had a loaded syringe inside her bra and contraband in her bags.  Officers searched the bags and identified two metal containers: one with heroin and the other with methamphetamine.  A digital scale was located on the floor between Howard's legs in the Jeep.  Officers also located a ledger of individuals who purportedly owed money.

Detective Rose identified Defendant as having an outstanding arrest warrant.  Detective Rose searched Defendant incident to arrest.  Detective Rose found $1,598 in U.S. currency in Defendant's pockets.  Detective Rose also searched the vehicle and found a Mentos candy container with a false bottom in the driver's side front door panel.  The Mentos container had a sliding channel storage bag containing a "quantity of narcotics."

Detective Pittman told Defendant his apartment was going to be searched.  Defendant asked Howard to retrieve a key to a safe from the Jeep, take the detectives to the apartment, and show them what was located inside the safe.  Howard gave the key to Detective Pittman.  Howard went to the apartment with the detectives, and she took them into the bedroom where the safe was located.

Detective Pittman opened the safe and found approximately $1,000 in currency, five bags of brown or grey heroin, a few bags of methamphetamine, marijuana, digital scales, a notebook, and a .45 caliber pistol.  The notebook contained

handwriting from Howard's ledger seized from the prior traffic stop. One page of the notebook contained the name "Tracy" and stated she owed $140.

Defendant was indicted for trafficking in opium/heroin by possession, trafficking opium/heroin by manufacture, trafficking in methamphetamine by possession, trafficking in methamphetamine by manufacture, possession with intent to sell/deliver cocaine, possession with intent to sell/deliver marijuana, and for possession of a firearm by a convicted felon.

Defendant filed a Motion to Suppress the statements he had made to the officers during the stop. The trial court entered an oral order to suppress Defendant's initial statements but denied the Motion on all other grounds. Defendant filed a second Motion to Suppress evidence from the traffic stop. The trial court denied this Motion.

The State voluntarily dismissed Defendant's charges of trafficking in methamphetamine by possession, trafficking in methamphetamine by manufacture, possession with intent to sell/deliver cocaine, and possession with intent to sell/deliver marijuana prior to trial.

The jury convicted Defendant of the remaining charges. Defendant was sentenced for his trafficking in opium/heroin by possession conviction as a prior record level II offender with five prior record level points to an active sentence of 90 to 120 months. Defendant was sentenced for his trafficking in opium/heroin by transportation conviction to an active sentence 90 to 120 months, both sentences to

run consecutively. Defendant was also sentenced to an active sentence of 14 to 26 months for possession of a firearm by a convicted felon, which was suspended for 36 months of supervised probation. Defendant appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. Issues

Defendant argues the trial court erred by allowing the State to introduce his non-*Mirandized* statements at trial, by denying his second Motion to Suppress without holding an evidentiary hearing, by prohibiting him from cross-examining Howard about her pending charges, and by denying his Motion to Dismiss the trafficking in opium/heroin charges by possession and transportation.

Defendant has also filed a Motion for Appropriate Relief before this Court on 27 February 2025 asserting he received ineffective assistance of counsel ("IAC").

## IV. Introduction of Non-*Mirandized* Statements

Defendant filed a pre-trial motion *in limine* to suppress his roadside statements and argued his statements were elicited in violation of his Fifth and Fourteenth Amendment rights protected by the Constitution of the United States and Article I, Sections 19 and 23 of the North Carolina Constitution. *See Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966); U.S. Const. amend. V, XIV; N.C. Const. art. I §§ 19, 23.

The trial court made the following oral findings: Defendant was in custody

when the statements were made, Defendant had not been *Mirandized*, and the first part of Defendant's statement was made in response to police questioning likely to elicit an incriminating response. The trial court found the second part of Defendant's statement, wherein he instructed Howard to "get the key off the keychain in the ignition" and to "go with the officers to the house and unlock the safe for them," were statements not made in response to police questioning. The trial court held this second part of the statement was spontaneous, voluntary, and admissible at trial.

### A. Standard of Review

This Court reviews alleged constitutional violations under a *de novo* standard of review. *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams,* 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### B. Preservation

The State argues Defendant failed to preserve this issue for appellate review. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make[.]" N.C. R. App. P. 10(a)(1). "A motion *in limine* is 'not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at

trial.'" *State v. Anthony*, 271 N.C. App. 749, 752, 845 S.E.2d 452, 455 (2020) ( quoting *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001)). "Failure to object at trial waives appellate review, when evidence is tendered after counsel sought to exclude the evidence in a pre-trial motion to suppress or a motion *in limine*." *Id.*

"When the question does not indicate the inadmissibility of the answer, [the] defendant should move to strike as soon as the inadmissibility becomes known. Failure to so move constitutes a waiver." *State v. Adcock*, 310 N.C. 1, 19, 310 S.E.2d 587, 598 (1984). Where a defendant does not move to strike an admissible answer, his objection is waived. *Id.*

Defendant argues he preserved this issue by renewing his objection when the State began eliciting evidence of his statements at trial. Defendant correctly points out he objected during the testimony of Detective Moots:

> THE STATE: Okay. Were you there about – during the conversation about the safe keys?
>
> DETECTIVE MOOTS: Yes, I was.
>
> THE STATE: Tell us about that.
>
> DETECTIVE MOOTS: Once we located the drugs, Detective Pittman had made some conversation with him, he discussed about –
>
> DEFENDANT'S COUNSEL: Objection.

Defendant did not object during the introduction of the same evidence during the direct testimony of Detective Pittman:

- 8 -

> DETECTIVE PITTMAN: I spoke with [D]efendant, advised him that we were – we were going to go do a search of his Compass Landing apartment where he resided. I said, [i]s there anything illegal in there? And I said, [p]eople that reside there with you could be charged.
>
> And he then directed [Howard] to get his keys off the – to his safe off the Jeep keyring and go with them and open his safe.

"Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995). Defendant failed to object after Detective Pittman testified to the same information contained in his Motion *in Limine* and his prior preserved objection during the testimony of Detective Moots. Defendant failed to preserve this issue for appellate review.

Our appellate rules provide:

> In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal *when the judicial action questioned is specifically and distinctly contended to amount to plain error.*

N.C. R. App. P. 10(a)(4) (emphasis supplied).

Defendant does not argue the admission of Detective Pittman's testimony amounted to plain error. Defendant has failed to "specifically and distinctly contend[] . . . plain error" and is not entitled to plain error review on this issue. *Id.* His brief did not "specifically and distinctly" allege the admission of evidence from the now-

challenged stop amounted to plain error. He only contended the denial of the pre-trial Motion to Suppress amounted to plain error, which was otherwise not preserved for appellate review when the same evidence was admitted without objection. *See Alford*, 339 N.C. at 570, 453 S.E.2d at 516; *State v. Smith*, 269 N.C. App. 100, 105, 837 S.E.2d 166, 169 (2019) (denying appellate review of unpreserved issue when appellant's brief failed to "specifically and distinctly allege" plain error). Defendant's arguments are unpreserved and waived. *Id.*

## *V.* **Defendant's Second Motion *in Limine***

Defendant argues the trial court erred by summarily denying his second Motion to Suppress without holding an evidentiary hearing, making findings of fact, or drawing conclusions of law. Defendant asserts the issue should be remanded to the trial court for appropriate proceedings on the Motion to Suppress.

### A. Standard of Review

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

### B. Analysis

"Under N.C. Gen. Stat § 15A-977, a motion to suppress is not subject to a summary denial where the defendant has alleged a legal basis for the motion and has

provided a supporting affidavit." *State v. Kirkland*, 119 N.C. App. 185, 187, 457

S.E.2d 766, 768 (1995) (summarizing N.C. Gen. Stat. § 15A-977(c)). "The general rule

is that the trial court should make findings of fact to show the bases of its ruling."

*State v. O'Conner*, 222 N.C. App. 235, 241, 730 S.E.2d 248, 252 (2012) (internal

quotation marks and brackets omitted) (quoting *State v. Salinas*, 366 N.C. 119, 729

S.E.2d 63 (2012)). "If there is a material conflict in the evidence . . . the trial court

must [make findings of fact] in order to resolve the conflict." *Id.* Findings of fact and

conclusions of law "are required in order that there may be a meaningful appellate

review of the decision on a motion to suppress." *Id.*

This Court has held proper appellate review of an issue is unavailable where

no evidentiary hearing was held on defendant's motion to suppress asserting a legal

basis. *See State v. Johnson,* 203 N.C. App. 718, 722, 693 S.E.2d 145, 147 (2010). In

*Johnson*, the defendant contended an evidentiary discrepancy existed in the

justification for a police officer's search of his person, which ultimately led to his

arrest. *Id.* at 721, 693 S.E.2d at 146-47. The trial court in *Johnson* summarily

dismissed the motion to suppress without deciding the factual issue, which was the

basis of the arrest. *Id.* The defendant argued summary denial was improper and,

had the motion been granted and the requisite evidence suppressed, a jury would not

have convicted him. *Id.*

Here, unlike the motion in *Johnson*, Defendant's Motion did not allege a legal

basis for the suppression. Defendant asserts inconsistencies between the Detectives'

reasons for the stop justified suppression.  Defendant further asserts it is inherently incredible for Detective Rose to have observed a seatbelt violation because of dark window tinting.  Neither assertion sets forth a factual basis suggesting the stop was unconstitutional.  The Detectives' reasons to support the stop are based upon alternate versions of reasonable suspicion.  Defendant's argument is overruled.

## VI.  Howard's Cross Examination

Defendant argues the trial court erred by limiting Defendant from cross-examining Howard about pending charges, which arose from various trafficking offenses in another case.

## A. Standard of Review

Rule 611 of the North Carolina Rules of Evidence allows courts to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."  N.C. Gen. Stat. § 8-C1, Rule 611(a).  "[A]lthough cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court."  *State v. Coffey*, 326 N.C. 268, 290, 389 S.E.2d 48, 61 (1990).

Where charges pending against a witness are relevant to their testimony, limiting cross-examination to exclude those charges may violate the Confrontation Clause.  *State v. Hoffman*, 349 N.C. 167, 179-80, 505 S.E.2d 80, 88 (1998).  The Confrontation Clause guarantees a defendant the opportunity to cross-examine a witness but does not guarantee the opportunity to cross-examine witnesses in

"whatever way, and to whatever extent, the defense might wish." *State v. McNeil,* 350 N.C. 657, 677, 518 S.E.2d 486, 498 (1999) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 15, 19 (1985) (*per curiam*)).

Trial judges retain wide latitude to impose reasonable limits on cross-examination where the Confrontation Clause is implicated. *Id.* at 677, 518 S.E.2d at 499. We review the trial court's limitation on cross-examination for abuse of discretion. *State v. Bowman,* 372 N.C. 439, 444, 831 S.E.2d 316, 319 (2019). In discretionary matters, this Court "reverse[s] the trial court only when 'the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Locklear,* 363 N.C. 438, 448-49, 681 S.E.2d 293, 302 (2009) (internal quotation marks omitted) (quoting *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)). If the trial court ultimately abused its discretion in limiting cross-examination, the error is subject to harmless error analysis. *See id.*

**B. Analysis**

During cross-examination, defense counsel was allowed to inquire about the charges Howard faced for her involvement in the 25 October 2021 events. Defendant was also allowed to question Howard about her motivations to testify, specifically about whether she had been offered any help with her pending charges in exchange for her testimony against Defendant. Howard's testimony clearly reflected she had been charged as a co-defendant and had spent seven months in jail on those

associated pending charges. Defense counsel's inquiries on cross-examination sufficiently brought forth the issue of bias and allowed the jury to view and hear testimony directly from Howard.

The trial court's decision to limit testimony on charges pending against Howard on an unrelated event is not shown to be an abuse of discretion. The trial court was justified in limiting testimony designed to address Howard's credibility because an abundance of testimony on the subject had already been elicited during cross-examination. We hold the trial court did not abuse its discretion by limiting the scope of defense counsel's cross-examination of Howard.

## VII. Sufficiency of the Evidence

Defendant argues the trial court erred in denying his Motions to Dismiss the trafficking charges against him. Defendant challenges the chain of custody of the substances and asserts the State failed to show the substances analyzed by the State Crime Laboratory were the ones seized during the investigation.

## A. Standard of Review

"We review the trial court's denial of a motion to dismiss *de novo*. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Battle*, 253 N.C. App. 141, 143, 799 S.E.2d 434, 436 (2017) (citations and internal quotation marks omitted) (quoting *State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010)).

Our Supreme Court has held:

> The trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. All evidence, competent or incompetent, must be considered. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. In its analysis, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.

*State v. Bradshaw*, 366 N.C. 90, 92-93, 728 S.E.2d 345, 347 (2012) (citations and internal quotation marks omitted) (citing *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009); *State v. Allen*, 279 N.C. 406, 407, 183 S.E.2d 680, 681 (1971); and *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)).

## B. Analysis

Defendant challenges the chain of custody of the substances. "Any person who . . . manufactures . . . or possesses [a specified amount] of opium, opiate, or opioid . . . including heroin . . . shall be guilty of" trafficking opium/heroin. N.C. Gen. Stat. § 90-95(h)(4) (2023). The amount of heroin allegedly trafficked by the defendant is an element of the offense. *See State v. Keys*, 87 N.C. App. 349, 352, 361 S.E.2d 286, 288 (1987). Contrary to Defendant's argument, "any weak links in a chain of custody

relate only to the weight to be given evidence and not to its admissibility." *State v. Campbell*, 311 N.C. 386, 389, 317 S.E.2d 391, 392 (1984). This issue goes to the jury for it to weigh any alleged weakness in the State's case, and "any weak links" does not render the substances inadmissible. *Id. See State v. Berryman*, 170 N.C. App. 336, 340, 612 S.E.2d 672, 675 (2005). Defendant's argument is overruled.

## VIII. The State's Closing Argument

Defendant argues the trial court erred by failing to declare a mistrial *sua sponte* after allowing the jurors to physically examine exhibits containing fentanyl and telling the jurors fentanyl is transferrable and they could die if they got any of the substance on their face.

## A. Standard of Review

Our Supreme Court has held:

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. Under this standard, [o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken. To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair.

*State v. Waring*, 364 N.C. 443, 499-50, 701 S.E.2d 615, 650 (2010) (citations and

internal quotation marks omitted) (quoting *State v. McNeill*, 360 N.C. 231, 244, 624 S.E.2d 329, 338 (2006), *cert. denied*, 549 U.S. 960 166 L. Ed. 2d 281 (2006); *State v. Anthony* 354 N.C. 372 ,427; 555 S.E.2d 557, 592 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002); and *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999)), *cert. denied*, 564 U.S. 832, 181 L.Ed.2d 53 (2011).

## B. Analysis

Defendant argues the trial court should have declared a mistrial *sua sponte* after allowing the jurors to physically examine exhibits containing fentanyl and informing the jurors fentanyl is transferrable and lethal if any was exposed to their faces.

Our Supreme Court has held:

> when defense counsel fails to object to the prosecutor's improper argument and the trial court fails to intervene, the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial.

*State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017). Only where a reviewing court "finds both an improper argument *and* prejudice will this Court conclude that the error merits appropriate relief." *Id.* (emphasis supplied).

In North Carolina, "counsel is allowed wide latitude in the argument to the jury. . . [but] may not . . . place before the jury incompetent and prejudicial matters

by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Hill*, 311 N.C. 465, 472-73, 319 S.E.2d 163, 168 (1984) (citations and internal quotation marks omitted) (quoting *State v. Johnson*, 298 N.C. 355, 368, 259 S.E.2d 752, 761 (1979); and *State v. Britt*, 288 N.C. 699, 711, 220 S.E.2d 283, 291 (1975)).

The Supreme Court of the United States has further stated: "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 157 (1986) (internal quotation marks omitted) (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation marks omitted) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 40 L. Ed. 2d 431 (1974)).

Here, the State allowed the jurors to examine exhibits purportedly containing fentanyl and told the jury during closing argument fentanyl exposure could be fatal. The State's comments did not fall below the standard in *Darden*, and the prosecutor's remarks are not shown to be so improper to satisfy the first prong of *Huey*. *Id.*; *Huey*, 370 N.C. at 179, 804 S.E.2d at 469.

Presuming, without deciding, Defendant met the first prong of *Huey*, he has not shown the remarks were "so grossly improper as to impede the defendant's right to a fair trial," *Huey*, 370 N.C. at 179, 804 S.E.2d at 469, for this Court to conclude

the trial judge "abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken" to award a new trial. *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693 (1996). Defendant's argument is overruled.

## IX. Defendant's Motion for Appropriate Relief

Defendant has filed a motion for appropriate relief arguing he received IAC.

In order to show IAC, a defendant must satisfy the two-pronged test announced by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). The *Strickland* test for IAC has been adopted by the Supreme Court of North Carolina for state constitutional purposes. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985).

To show a counsel's deficient performance prejudiced him, Defendant "must show that his counsel's conduct fell below an objective standard of reasonableness." *Id.* at 561-62, 324 S.E.2d at 248 (citing *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result

unreliable.

*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693.  Accord *Braswell*, 312 N.C. at 561-62, 324 S.E.2d at 248.

Our Supreme Court stated it "ordinarily do[es] not consider it to be the function of an appellate court to second-guess counsel's tactical decisions[.]"  *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986).  When reviewing an IAC claim, "this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct."  *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004).

### A.  Enforcement of Motion to Suppress and Motion for Mistrial

"A stringent standard of proof is required to substantiate ineffective assistance claims."  *State v. Ramirez,* 156 N.C. App. 249, 254, 576 S.E.2d 714, 718 (2003) (internal quotation marks omitted).  Relief based upon such claims should only be granted when assistance of counsel is so lacking that the trial becomes a "farce" or "mockery of justice."  *Id.*  Counsel's performance prejudices a defendant only when "looking at the totality of the evidence, 'there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'"  *State v. Phillips,* 365 N.C. 103, 122, 711 S.E.2d 122, 138 (2011) (quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698).  Under the reasonable probability standard, "[t]he likelihood of a different result must be substantial, not just conceivable[.]"  *State v. Lane,* 271 N.C. App. 307, 314, 844 S.E.2d 32, 39 (2020).  Where the totality of evidence

presented supports the jury's verdict, the defendant cannot show counsel's assistance was constitutionally inadequate and their assignment of error is without merit. *See State v. Fraley,* 202 N.C. App. 457, 467, 688 S.E.2d 778, 786 (2010).

Judicial review of counsel's performance is highly deferential. *State v. Gainey,* 355 N.C. 73, 113, 558 S.E.2d 463, 488 (2002). A strong presumption exists that counsel's conduct falls within the broad range of what is reasonable assistance. *State v. Fisher,* 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986). Counsel is afforded wide latitude in matters of strategy, and the burden to show counsel's performance fell short of the required standard is heavy. *State v. Oglesby,* 382 N.C. 235, 243, 876 S.E.2d 249, 256 (2022).

"Ordinarily when a trial court instructs the jury not to consider prejudicial evidence, the prejudice is cured." *State v. McDougald,* 279 N.C. App. 25, 30, 862 S.E.2d 877, 881 (2021). Curative instructions are usually considered sufficient to prevent prejudice to defendants because jurors are presumed to understand and comply with the instructions of the court. *See State v. Young,* 291 N.C. 562, 573, 231 S.E.2d 577, 584 (1977) (internal citations omitted).

Whether an instruction can effectively cure the prejudicial effect of erroneous evidence ultimately "depend[s] in large measure upon the nature of the evidence and the particular circumstances of the individual case." *State v. Hunt,* 287 N.C. 360, 375, 215 S.E.2d 40, 49 (1975). Even if counsel improperly failed to object to improper testimony or to make a certain motion, if the defendant is unable to show prejudice

or a reasonable probability the trial outcome would have been different, but for the improper action of counsel, defendant's counsel will not be considered ineffective. *See State v. Campbell,* 359 N.C. 644, 694, 617 S.E.2d 1, 32 (2005).

Here, the presiding judge was informed at the beginning of trial about the prior ruling, which granted Defendant's Motion to Suppress statements associated with ownership of a safe and its contents made during the traffic stop at issue. State's counsel acknowledged the ruling and stated their intention to comply with that order. As trial progressed, counsel for the State initiated a line of questioning to Detective Moots, which threatened to elicit testimony covered and excluded by the Motion to Suppress. Defense counsel objected to the State's question at the time it was asked. The objection was overruled, and the line of questioning continued.

After approximately two minutes of testimony by Detective Moots in response to the State's question, defense counsel again intervened and asked to approach the bench. During this sidebar conversation with the trial judge, defense counsel informed the judge of the improper, excluded evidence presented during the previous testimony. The trial court immediately struck the line of questioning and issued a curative instruction to the jury.

Defense counsel's action in response to the State's initial question and inadmissible testimony that followed was attentive and proper. Defense counsel's initial objection to the question was overruled and counsel had no means to prevent the line of questioning from ensuing. By approaching the bench and making the trial

judge aware of the error, defense counsel acted as an appropriate advocate for Defendant. The trial court struck the questioning and issued a curative instruction to the jury. The jury is presumed to follow the trial court's instructions.

Defendant is unable to meet the heavy burden for showing counsel was acting so inappropriately as to prevent Defendant from receiving effective assistance. *See Oglesby,* 382 N.C. at 243, 876 S.E.2d at 256. Defendant's argument is overruled.

## B. Preservation of Partial Denial

Defendant argues he received ineffective assistance of counsel when his attorney failed to properly preserve the partial denial of his previous Motion to Suppress for appellate review.

"[A] party's failure to preserve an issue for appellate review ordinarily justifies [this Court]'s refusal to consider the issue on appeal. *State v. Mills*, 205 N.C. App. 577, 584, 696 S.E.2d 742, 747 (2010) (quoting *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008)). "However, where a party has failed to preserve an issue for appeal, this Court may review the assignment of error to correct fundamental errors." *Id.*

> The imperative to correct fundamental error [ ] may necessitate appellate review of the merits despite the occurrence of default. For instance, plain error review is available in criminal appeals, for challenges to jury instructions and evidentiary issues. Our [State's Supreme Court] decisions have recognized plain error only "in truly exceptional cases" when "absent the error the jury probably would have reached a different verdict."

*Dogwood Dev.*, 362 N.C. at 196, 657 S.E.2d at 364 (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d. 80, 83 (1986)).

Counsel's failure to properly preserve an issue for appellate review, resulting in Defendant's claims being subject to a less favorable standard of review, is insufficient to uphold an ineffective assistance of counsel claim if Defendant cannot show he was sufficiently prejudiced by counsel's conduct. *See See State v. Whitted*, 209 N.C. App. 522, 536, 705 S.E.2d 787, 797 (2011) (holding defense counsel's failure to preserve the trial court's denial of her motion to require the State to conduct a photo lineup identification did not alter the outcome of the trial and therefore did not prejudice the defendant.)

Presuming, without deciding, counsel improperly failed to preserve the partial denial on Defendant's Motion to Suppress for appellate review, Defendant has not shown prejudice sufficient to prove the outcome would probably have been different if an objection to Detective Pittman's testimony had been timely made. Should the error by defense counsel have been sufficient to cause manifest injustice to Defendant and argued on appeal, this Court could analyze the allegations of error under the plain error standard of review. Defendant's ineffective assistance claim is not automatically foreclosed from appellate review simply because of defense counsel's failure to properly preserve the issue. Defendant's appellate counsel did not assert plain error review before this Court in his direct appeal. Defendant's Motion for Appropriate Relief is denied. *Id.*

## X.    Conclusion

The trial court did not err in allowing the State to introduce Defendant's non-*Mirandized* spontaneous statements at trial, by limiting him from cross-examining Howard about her unrelated, pending charges, and by denying his motion to dismiss the trafficking opium/heroin charges by possession and transportation.  Defendant did not receive ineffective assistance of counsel.  Defendant's Motion for Appropriate Relief is denied.

The trial court did not prejudicially err by summarily denying the Motion without fact finding or legal conclusions.  Defendant received a fair trial free from prejudicial errors he preserved and argued.  *It is so ordered.*

NO PREJUDICIAL ERROR.

Judges WOOD and GORE concur.

Report per Rule 30(e).